UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Wayne B. Sargent

   v.                                        Civil No. 12-cv-102-SM

N.H. Department of Corrections et al.[1]


**SUPPLEMENTAL REPORT AND RECOMMENDATION**


    Before this court is pro se plaintiff Wayne Sargent's complaint (doc. nos. 1 and 15) for preliminary review, and his motion to reconsider (doc. no. 19) the August 31, 2012, report and recommendation (doc. no. 17), which recommended dismissal of the complaint (doc. nos. 1 and 15) in its entirety. Sargent seeks reconsideration of the August 31 report and recommendation (doc. no. 17), to the extent that this court recommended dismissal of certain federal constitutional claims that are not time-barred. In an order issued this date, the court has denied the motion to reconsider (doc. no. 19). Without altering the recommendation set forth in the August 31 report and

---

[1] Defendants named in the complaint are William Wrenn, New Hampshire Department of Corrections ("NH DOC") Commissioner; Chris Kench, NH DOC Assistant Commissioner; Richard Gerry, New Hampshire State Prison ("NHSP") Warden; Helen Hanks, NHSP Director of Forensics; Kim Marsh, Director of the NHSP Sex Offender Treatment Program; and New Hampshire Adult Parole Board members Pierre Morin, Mark Furlone, Jeffrey Brown, Megan Devorsey, Kathryn McCarrol, Dick Flynn, and Donna Sytek.

recommendation, this supplemental report and recommendation sets forth additional grounds upon which the district judge should base an order dismissing all claims in this action, for failure to state a claim upon which relief can be granted.

## Background

Sargent, an inmate at the New Hampshire State Prison ("NHSP"), is serving the second of a series of consecutive sentences. His sentencing order provides that part of the minimum of his remaining two sentences may be suspended if Sargent demonstrates meaningful participation in the NHSP sex offender treatment ("SOT") program.

NHSP officials have twice terminated Sargent from the SOT program, most recently in 2008. In October 2010, the Adult Parole Board held a hearing on Sargent's parole application and denied him parole because he had been twice terminated from the SOT program. The board's decision states that Sargent could reapply for parole when he is found acceptable for re-entry into the SOT program, and the board directed Sargent to reapply for the program. During the parole hearing, Sargent alleges, board members told him to stop proselytizing and putting his religion above the SOT program.

After the parole hearing, Sargent reapplied for admission to the SOT program. Defendant NHSP program director Kim Marsh denied Sargent readmission, citing his two prior terminations,[2] and prison officials upheld her decision when Sargent grieved the issue.

Sargent litigated claims challenging the 2010 decision of the parole board, and the decision to deny him re-entry into the SOT program, through a post-conviction motion filed in state court. The state superior court denied Sargent's motion, and the New Hampshire Supreme Court declined to accept Sargent's appeal of that order. See State v. Sargent, Nos. 211-1996-CR-00245 & 211-1997-CR-00081 (N.H. Super. Ct. Belknap Cnty.) (Ex. 4 to Compl. (doc. no. 1-4), at 32-33 (superior court orders)), appeal declined, No. 2011-0351 (N.H. June 22, 2011).

Sargent filed this action thereafter, asserting claims arising under 42 U.S.C. § 1983. This court undertook a preliminary review of the complaint (doc. nos. 1 and 15), and in its August 31 report and recommendation (doc. no. 17), identified several types of claims, asserting federal

---

[2] NHSP Policy and Procedure Directive ("PPD") 6.35(IV)(D)(10)(b)(5)(a) (eff. 12/30/08), states that inmates terminated more than twice from the intensive SOT program are not eligible for readmission. That PPD, which was effective in 2010, has since been superseded.

constitutional violations, which this court grouped into two categories: time-barred claims and collaterally-estopped claims. In the August 31 report and recommendation (doc. no. 17), the court recommended dismissal of the time-barred claims challenging Sargent's 2008 SOT program termination, based on its finding that those claims accrued in 2008. The time-barred claims are not at issue in the motion to reconsider.

The August 31 report and recommendation (doc. no. 17) further recommended dismissal of the remaining claims, relating to the parole board's 2010 decision and defendants' denial of Sargent's SOT program re-application, on the ground that Sargent's unsuccessful litigation of those claims in a post-conviction proceeding in 2011 in the state courts collaterally estopped him from re-litigating the same issues in this case. Sargent seeks reconsideration of the August 31 report and recommendation (doc. no. 17), to the extent that it recommended dismissal of the following claims, as collaterally estopped:

> 1. The parole board in 2010 violated Sargent's right to due process by placing an impossible condition precedent upon Sargent's eligibility for parole, namely, successful re-entry into the NHSP's SOT program.
>
> 2. The parole board in 2010 violated Sargent's right to the free exercise of religion by telling him that he had to stop proselytizing and placing his religion above his participation in the SOT program.

4

3.  SOT program director Kim Marsh violated Sargent's right to equal protection by refusing to re-admit him to the SOT program in 2010 after he had been twice terminated from that program, while allowing other inmates to re-enter the program up to five times.

## Discussion[3]

Without rescinding any part of its August 31 report and recommendation (doc. no. 17), this court provides the following supplemental set of reasons why the district judge should dismiss the claims that are not time-barred.

I.  Parole

Sargent's due process claim challenging the parole board's decision to deny him parole in 2010 fails to state a claim upon which relief can be granted. "[P]rocedural due process imposes constraints on governmental decisions which deprive individuals of liberty or property." Collins v. Univ. of N.H., 746 F. Supp. 2d 358, 368 (D.N.H. 2010) (citation and internal quotation marks omitted), aff'd, 664 F.3d 8 (1st Cir. 2011). The Due Process Clause itself does not confer on an inmate any right to or liberty interest in parole. See Jimenez v. Conrad, 678 F.3d 44,

---

[3] The preliminary review standard set forth in the August 31 report and recommendation (doc. no. 17) governs this court's consideration of whether Sargent has stated claims upon which relief can be granted. That standard need not be repeated in this supplemental report and recommendation.

46 (1st Cir. 2012) ("a convict has no liberty interest in being paroled unless the statute providing eligibility to seek parole is so phrased as to create a positive entitlement if statutory conditions are met" (citing Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1 (1979)).

The New Hampshire parole statute does not create any liberty interest in or entitlement to parole. See Ainsworth v. Stanley, 317 F.3d 1, 5 (1st Cir. 2002). The statute and the administrative regulations governing the parole board's conduct provide that granting or denying parole is a decision squarely within the board's discretion. See N.H. Rev. Stat. Ann. ("RSA") § 651-A:6 (parole board "may" grant parole to eligible inmates); N.H. Code Admin. R. Ann. Par-301.02 ("[p]arole shall be considered a privilege"); Knowles v. Warden, 140 N.H. 387, 389, 666 A.2d 972, 974-75 (1995) (parole board has broad discretion and is not mandated to grant parole). Accordingly, the decision of the parole board to deny Sargent parole did not deprive him of any liberty interest without due process.

Furthermore, there is no substantive due process violation at issue, as there is nothing shocking in denying the possibility of parole to Sargent, a convicted sex offender, until he demonstrates an ability to re-enter the prison's

treatment program targeting sex offenders, where the sentencing order specifically recommends that the program be offered to him, and his sentence requires him to participate meaningfully in treatment programs. Cf. Jimenez, 678 F.3d at 47 (there is nothing "shocking" in allowing parole board "wide enough discretion to reflect the specific interests of law enforcement"). Accordingly, Sargent's claim asserting that the parole board denied him due process should be dismissed.

II. Free Exercise

The Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). Inmates have a First Amendment right to exercise their religion, but that right may be restricted if there is a reasonable relationship between the restriction and a legitimate penological objective, and the restriction is not an exaggerated response to the objective. See Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)).

Sargent alleges in the complaint (doc. nos. 1 and 15) that in a parole board hearing, board members advised him to stop proselytizing and to stop putting his religion above the SOT

7

program. The context for the statement is the rationale offered by prison officials in 2008 for terminating Sargent from the SOT program. The record reveals that prison officials were concerned that Sargent continued to proselytize another SOT program participant after that participant told Sargent that he did not want to talk about religion. Program staff viewed Sargent's conduct as "violat[ing] a boundary" in a manner justifying Sargent's termination from the SOT program.[4] App'x to Compl. (doc. no. 1-4, at 5). Thus, the parole board's remark related to Sargent's proselytizing in the context of the SOT program, including proselytizing inmate participants who said that they did not want to talk about religion.

Sargent has not been in the SOT program since 2008 and was not in the SOT program in 2010. Even if Sargent could show that the comment made in 2010 by the parole board restricted his religious practices, he has failed to show that the restriction was an exaggerated response to the parole board's legitimate goal of his rehabilitation, prior to deeming him eligible for parole. Cf. Kuperman, 645 F.3d at 74-77 (applying Turner factors to determine whether prison restriction impacting

---

[4] Whether the termination in 2008 violated Sargent's right to religious freedom is not before the court at this time, as that claim is time-barred.

religious practices was valid).  The parole statute directs the board to consider whether the applicant has been rehabilitated.  See RSA § 651-A:6.  The advice extended to Sargent is rationally related to the legitimate goal of rehabilitation, and to the goal of ensuring Sargent's completion of available treatment programs, where his past proselytizing of an unwilling inmate was one reason for his failure to complete the program in the past.  Sargent has failed to show that allowing him to proselytize without limitations in the SOT program in the future, at the risk of being terminated again for such conduct, would advance the legitimate rehabilitative objectives for Sargent, without imposing undue costs upon the parole board, prison staff, and other inmates.  Sargent has thus failed to show that the parole board member's comment was an exaggerated response, not reasonably related to legitimate penological and/or parole objectives.  Accordingly, the court should dismiss the free exercise claim.

III. Equal Protection

In general, to establish an equal protection claim, a plaintiff must demonstrate that: (1) compared with others similarly situated, he was selectively treated; and (2) that the selective treatment was motivated by purposeful discrimination

on some improper basis, such as plaintiff's membership in a particular race or religion.  See Hernandez v. New York, 500 U.S. 352, 360 (1991).  To establish a claim of different treatment, Sargent must identify instances where persons "situated similarly in all relevant aspects" were treated differently, for the purpose of showing that he was singled out for unlawful oppression.  Ayala-Sepúlveda v. Municipality of San Germán, 671 F.3d 24, 32 (1st Cir. 2012) (emphasis in original) (internal quotation marks and citation omitted).

Sargent has not clearly articulated the basis upon which he claims discrimination by defendants.  To the extent that Sargent's claim is essentially a "class of one" equal protection claim, see generally Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), he must show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Jackson v. Norman, 264 F. App'x 17, 20 (1st Cir. 2008) (internal quotation marks and citation omitted).  Here, Sargent has alleged that NHSP officials singled him out for less favorable treatment by allowing other inmates who have been terminated from the SOT program more than twice to be readmitted, but not extending that opportunity to him.  In response to Sargent's inmate request

slip asserting that other inmates had been readmitted, NHSP Medical Director Helen Hanks indicated that case-specific factors are relevant when evaluating applications for re-admission to determine if the applicant's case presented "special circumstances outside the policy." Ex. 1-4, at 35. The case-specific factors relevant to Sargent's 2008 termination included the staff's judgment that he failed to respect a "boundary." Sargent has not alleged any facts showing that other inmates admitted more than twice had been previously terminated for similar reasons, and he has also failed to show that the different treatment they received bore no rational relationship to their specific circumstances. Accordingly, the court should dismiss the equal protection claim asserted by Sargent.[5]

## Conclusion

For reasons set forth above and in the August 31 report and recommendation (doc. no. 17), the court recommends dismissal of the complaint (doc. nos. 1 and 15) in its entirety. Pursuant to

---

[5] To the extent that Sargent is alleging discrimination based on his religious affiliation, Sargent has failed to allege any facts showing that persons of different faiths have been treated differently with respect to readmission to the SOT program. The facts alleged are thus insufficient to establish a claim of religious discrimination relating to events occurring in 2010.

LR 7.2(e) and Fed. R. Civ. P. 72(b)(2), any objections to the August 31 report and recommendation (doc. no. 17), and to this supplemental report and recommendation, must be filed within fourteen days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See United States v. De Jesús-Viera, 655 F.3d 52, 57 (1st Cir. 2011), cert. denied, 132 S. Ct. 1045 (2012); Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

                                                Landya McCafferty
                                                United States Magistrate Judge

January 31, 2013

cc: Wayne B. Sargent, pro se

LBM:nmd